**UNITED STATES of America**
v.
**Frank MAZZEI.**
**Crim. A. No. 75–165.**

United States District Court,
W. D. Pennsylvania.
Aug. 13, 1975.

Samuel J. Orr, III, Asst. U. S. Atty., Pittsburgh, Pa., for United States.

John Rogers Carroll, Harry Caplan, Pittsburgh, Pa., for defendant.

## MEMORANDUM ORDER

WEBER, District Judge.

Defendant was previously convicted for extortion under the Hobbs Act on a charge that he, as a state senator, extorted funds under color of office from persons leasing property to the state. The defense was that these funds were voluntary contributions to a political fund, D.C., 390 F.Supp. 1098, aff'd 521 F.2d 639.

Defendant, after conviction, was called before a grand jury to testify under a grant of immunity. His testimony before the grand jury produced the present indictment for perjury.

Defendant moves to dismiss this indictment on the grounds that the defendant's statements are not literally untruthful because the prosecutor's questions were not sufficiently precise; and, that defendant's explanatory statement, given at a later time, of his interpretation of the government's questions, bars prosecution under 18 U.S.C. § 1623 (d).

We have examined the testimony in question to determine any lack of precision in the government's questions. Beginning on p. 24, line 8 of the transcript, we have a question, "Did you count *that money* at your office?" This described certain money delivered to defendant's office. Following this specific noun, practically every question and answer thereafter contain the pronoun "it" which can only refer to the antecedent noun "that money." The defendant testified that he put "it" in a box at his home and "it" was still there.

We cannot accept as logical or reasonable the argument that because defendant was asked during the questioning whether "it" was $11,300 or $299, the reference to "it" transferred from "that money" to the sum of money described and not the specific currency. In the question "Was it $11,300.00 or $299?" the word "it" still refers to "that money" and the later use of "it" still refers to "that money" and not to a specific sum of money.

■ We do agree that the specific question and answer contained subsequently on page 25, beginning at line 17, might be so argued if taken alone:

> Q. No let me understand: From July, 1973, which is the date indicated that you received the money, until the present day, $11,300.00 in cash has been in your closet?
>
> A. At 14 Mt. Oliver Street, right.

This may not be untruthful, but it does not alter the conclusion drawn from the preceding two pages of testimony, that there is no sufficient ambiguity in the question to withdraw the evidence from the consideration of the jury. We do not believe that any of the simple terms used here were so cryptic as to prevent a meeting of the minds. *United States v. Ceccerelli*, 350 F.Supp. 475 (W.D.Pa. 1972).

We find a clear distinction between this situation and that in *Bronston v. United States*, 409 U.S. 352, 92 S.Ct. 1495, 31 L.Ed.2d 793 (1973) where the tense of the verb used was material. Although the defendant there did have a prior account in a Swiss bank, at the time he gave his answer he had none. The answer to the question posed was literally true. To a more specific question, he gave a non-responsive answer, true but misleading. This was insufficient to sustain an indictment to perjury. The conclusion of the court was that it was not a criminal act to state any matter that implies an answer that he does not believe to be true. Similarly, the dissenting opinion of Judge Ely in *United States v. Cook*, 497 F.2d 753 (9th Cir. 1972) points out that the question was asked in the present tense, and this precluded any proof of knowledge of prior events to show perjury.

In the present case, there is no difficulty of tense or misplaced modifications that could lead to ambiguity. We find the questions asked to be simple, direct and unequivocal, precluding our dismissal of the indictment as insufficient. It is a question for the jury.

■ As to the application of Subsection (d) of Sec. 1623, we find on the basis of the matters of events admitted at the argument that the defendant's attempt to explain his understanding of the questions is no bar to the prosecution. Defendant was questioned on April 23, 1975. Following this appearance before the grand jury, defendant's counsel was advised by the U.S. Attorney that he considered defendant's answers to be untrue and would seek an indictment. Thereafter, on May 9, 1975, defendant appeared before two agents of the FBI to make his clarifying statement.

The language of Subsection (d) covers this situation; the subsequent admission of falsity is a bar "if it has not become manifest that such falsity has been or will be exposed." The defendant's subsequent explanation was clearly made after it had become manifest that the falsity would be exposed. See *United States v. Egil Krogh*, 366 F.Supp. 1255 (D.D.C.1973).

**20**

We further find that the questions of the U.S. Attorney were material to a matter properly under investigation by the grand jury, the disposition of moneys received by defendant under "color of office" as disclosed in his prior Hobbs Act conviction.

### ORDER

And now this 13th day of August, 1975, in accordance with the foregoing opinion, Defendant's Motion to Dismiss the Indictment is denied.

### ORDER OF TRANSFER UNDER F.R.Crim.Proc. 21(a)

Defendant has moved for a change of venue on his present indictment for perjury because pre-trial publicity creates so great a prejudice against him that he cannot obtain a fair and impartial trial in this District. Defendant is a former member of the Senate of Pennsylvania from Pittsburgh whose prior trial under the Hobbs Act for extortion under color of office received state-wide publicity. The state-wide publicity continued after his conviction over attempts to remove him from his seat in the state senate, and his final expulsion from the senate. This publicity has not subsided, being repeatedly fueled by accounts of related trials of other legislators or former legislators recently held.

That the publicity extends through all Pennsylvania is evident from the large file of newspaper accounts presented by Defendant's counsel. Defendant still remains a target of adverse editorial comment to the present.

We conclude that the only effective transfer must be to a District Court in a state outside Pennsylvania, and, in this Judicial Circuit, the District of Delaware appears in the view of the Court and by the acquiescence of counsel to be the District least affected by internal affairs in Pennsylvania.

### ORDER

And now this 13th day of August, 1975, upon motion of Defendant and in accordance with Federal Rule of Criminal Procedure 21(a), the within proceeding is hereby ordered transferred to the United States District Court for the District of Delaware.